THOMAS AMERICA CORPORATION,
a Corporation, Plaintiff,

v.

Robert M. FITZGERALD, an
Individual, Defendant.

No. 94 Civ. 0262 (CBM).

United States District Court,
S.D. New York.

Dec. 1, 1994.

John N. Bain, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Roseland, NJ, for plaintiff.

Robert M. Fitzgerald, pro se.

## MEMORANDUM OPINION

MOTLEY, District Judge.

## BACKGROUND

The instant case has a protracted and muddied history. The Defendant, Robert M. Fitzgerald, is the owner of United States Design Letters Patents No. Des. 297,532 (the "'532 patent") and No. Des. 297,533 (the "'533 patent") and of United States Trademark Registrations No. 1,479,454 ("The Country Store Telephone") and No. 1,479,453 ("The County Line Telephone"). On two prior occasions, Fitzgerald has sued the Plaintiff herein, Thomas America, alleging patent and/or trademark infringement in connection with the latter's sale of its model PP9 telephone. Thomas America filed the instant action principally to seek declaratory relief as to Fitzgerald's patents and trademarks. Plaintiff additionally asserts pendant state law claims of unfair competition and breach of settlement agreement.

The court's jurisdiction over the federal law claims is invoked under both the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 (1993), and the laws of the United States regarding actions related to patents and trademarks, 28 U.S.C. §§ 1331, 1338(a) (1988). The court's jurisdiction over the state law claims is invoked under 28 U.S.C. §§ 1332(a) and (c), 1338(b), and 1367(a) (1988).

Plaintiff has filed two separate motions for partial summary judgment. The first goes to the issue of patent invalidity, unenforceability and noninfringement; and the second goes to the issue of trademark abandonment. The court heard oral argument on both motions on November 18, 1994. For the reasons discussed below, the court grants plaintiff's first motion and denies its second.

## I. Plaintiff's Motion for Partial Summary Judgment of Patent Invalidity, Unenforceability, and Noninfringement.

Defendant is allegedly the owner of two design patents that cover wood simulated, wall mounted telephones that are purposefully reminiscent of public domain telephones in existence in the early part of this Century. The ornamental characteristics of the design covered by the '533 patent include the following:

(1) a simulated wood, rectangular box-like body mounted on a rectangular, simulated wood back plate which is slightly larger than the box-like body;

(2) a circular push-button dial mounted on the front surface of the box-like body;

(3) a pair of bells mounted side-by-side above the dial on the front surface of the box-like body;

(4) a ringer escutcheon mounted between the pair of bells on the front surface of the box-like body;

(5) a cradle projecting from one side of the box-like body and carrying a handset; and

(6) a transmitter cup and a receiver cup mounted on opposite ends of the handset with a cylindrical simulated wood handle mounted between these cups.

The '532 patent also covers a wood simulated, wall mounted telephone which was purposefully designed to be reminiscent of public domain telephones in existence in the 1920's. The telephone design which is the subject matter of this patent contains the identical features of the '533 patent, except that the rectangular backplate is larger than that shown in the '533 patent, thus accommodating the mounting of a simulated wood writing desk below the box-like body.

On March 29, 1992, Thomas America began selling an antique looking, country style, wooden wall telephone—Thomas America's model PP9—that, like Fitzgerald's phones is reminiscent of telephones in use in the 1920's. Prior to Thomas America's introduction of this phone, then-counsel for Fitzgerald sent Thomas America a letter, dated March 13, 1992, threatening to sue Thomas America for infringement of the '532 and '533 patents should Thomas America manufacture and sell its model PP9. For over two and one-half years since then, the parties have been in and out of federal courts across the country doing battle over these patents. In its first motion for partial summary judgment, Plaintiff seeks to end this dispute by having the '532 and '533 patents declared

invalid. For the reasons discussed below, the court will grant that relief.

### A. The Standard For Summary Judgment Under Rule 56.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted when the court concludes from the record before it that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).

The mere existence of disputed facts will not preclude entry of summary judgment. *See, e.g., Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *Cubby, Inc. v. CompuServe Inc.,* 776 F.Supp. 135, 138 (S.D.N.Y.1991); *United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assoc.,* 755 F.Supp. 1195, 1199 (S.D.N.Y.1989). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Herbert Constr. Co. v. Continental Ins. Co.,* 931 F.2d 989, 993 (2d Cir.1991).

Once the moving party meets its burden by "pointing out the absence of evidence to support the nonmovant's claims," *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 710 (2d Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)), the burden shifts to the nonmoving party to establish that a genuine issue of fact exists for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511.

The nonmoving party must then produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2511; *see also Matsushi-*

*ta Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmoving party may not simply rely upon "[s]peculation, conclusory allegations, and mere denials ... to raise genuine issues of [material] fact." *National Westminster Bank v. Ross,* 676 F.Supp. 48, 51 (S.D.N.Y.1987); *see also Delaware & Hudson Ry. Co. v. Conrail,* 902 F.2d 174, 178 (2d Cir.1990), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). Rather, the nonmoving party "must provide 'concrete particulars' showing that a trial is needed, and '[i]t is not sufficient merely to assert a conclusion without supplying supporting argument or facts.'" *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (citation omitted); *see also Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.,* 926 F.2d 134, 139 (2d Cir.1991).

### B. The Non–Obviousness Requirement For Patents.

Thomas America argues in essence that the '532 and '533 patents are invalid because the designs they cover are obvious in view of the prior art. The requirement of non-obviousness for a patent is provided in 35 U.S.C. § 103 which states in pertinent part that:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. *35 U.S.C. § 103 (1988).*

This section is made applicable to design patents by 35 U.S.C. § 171. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1124 (Fed.Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993). In applying this section, the Supreme Court has put forth the following guidelines:

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at

issue are to be ascertained; and the level of ordinary skill in the pertinent art are to be resolved. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966).

When analyzing a design patent, "obviousness is determined from the vantage of 'the designer of ordinary capability who designs articles of the type presented in the application.'" *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1564 (Fed. Cir.1988) (quoting *In re Nalbandian,* 661 F.2d 1214, 1216 (C.C.P.A.1981).

As evidence of prior art, Thomas America refers to reproduction telephones previously made both by Fitzgerald himself as well as by other manufacturers. Some of these were disclosed to the United States Patent & Trademark Office ("PTO") in connection with Fitzgerald's applications and some were not. Among the examples of Fitzgerald's own prior art cited by the Plaintiff are telephones that appeared in Spiegel catalogs from Spring 1986, Fall 1986, and Spring 1987. (Gleason Decl., Ex. D.) In deposition testimony given in one of the prior actions between the parties to the instant case, Fitzgerald identified six differences between his prior telephones and the telephones at issue:

(1) relocation of switches from the back to the front of the telephone;

(2) modification of the cradle;

(3) modification of the handset, including the transmitter cap, transmitter cup, and handle;

(4) rotation of handset by 90 degrees thereby changing direction in which handset sits in cradle;

(5) modification of the internal mechanism for the hook switch and ringer volume control; and

(6) replacement of rotary dialer with a circular tone/pulse dialer. (Gleason Decl., Ex. C at Tr. 170–71.)

■ A design patent pertains solely to the aesthetic appearance of an article of manufacture. *L.A. Gear,* 988 F.2d at 1123. According to the Federal Circuit, "if the appearance of [a] claimed design is 'dictated by' the use or purpose of the article[, or i]f the particular design is essential to the use of the article, it can not be the subject of a design patent." *Id.* However, the dichotomy between what is functional and what is aesthetic cannot be applied *in seriatim* to each element of a given design; rather the test must be applied to the design as a whole. *Id.* In this light, items (1), (4), (5), and (6) seem clearly to be dominated by utilitarian concerns. Thus, there is some question as to whether the novel features of the disputed Fitzgerald telephones even constitute appropriate subject matter for a design patent.

■ Even if one puts this issue aside, Mr. Fitzgerald's telephones fail the test for nonobviousness under Section 103. The differences outlined above between Fitzgerald's own prior art and the telephones he later patented are simply not significant enough that they would not have been obvious to a novelty telephone designer of ordinary capability. Indeed, some of the six new features identified by Mr. Fitzgerald are not as novel as he indicates. Thus, one of the prior Fitzgerald phones which appeared in Spiegel's Spring 1987 catalog at page 466, item B, and was cited by the PTO as prior art to both patents, included a circular push button dial. (Gleason Decl., Ex. D.) Additionally, another telephone allegedly manufactured by Fitzgerald which appeared in Spiegel's Fall 1986 catalog at page 587, item N, but was never disclosed to the PTO features a handset that is quite similar to the one in the '532 and '533 patents. (Gleason Decl., Ex. D.)

The failure of the '532 and the '533 patents under the non-obviousness test is even more apparent upon examination of the prior art of other manufacturers. For example, the company TeleConcepts, Inc. has previously marketed its "Country Wall" and "Country Talk" telephones both of which disclose all of the key features of Fitzgerald's patents, including the circular push button dial pad and identical positioning of the handset in the cradle. (Pl.'s Trial Ex. 6.) Similarly, since at least December 1982 AT & T has marketed its "Country Junction Telephone." (Gleason Decl., Ex. H.) This phone, which is all but identical to the design in the '533 patent, discloses a rectangular, box-like body having a front surface on which a pair of bells are mounted over a circular touch tone dialer,

and a handset which is positioned in the same manner as the one in Fitzgerald's patents.

▋ If an examination of the totality of the prior art suggests the overall appearance of the claimed design, and not merely its components, then rejection of a design patent application under 35 U.S.C. § 103 is appropriate. *In re Cho,* 813 F.2d 378, 382 (Fed. Cir.1987). *See also In re Carlson,* 983 F.2d 1032, 1038–39 (Fed.Cir.1992). Based upon the above examination of the prior art pertinent to Fitzgerald's telephone designs, it is clear that an order directing the cancellation of Fitzgerald's patents is appropriate under this standard. Even the claim that Fitzgerald has combined design elements that were not all previously seen together would be of no avail because any such "combination of old elements 'must represent an exercise of inventive skill and creative talent beyond that of the ordinary designer chargeable with knowledge of the prior art.' " *United States Tel. Co. v. American Telecommunications Corp.,* 204 U.S.P.Q. 951, 956, 1979 WL 25151 (D.Conn.1979) (quoting *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694, 696 (2d Cir.1961)). Simply put, Fitzgerald has done too good a job of reproducing early twentieth century *public domain* phones and, thus, has failed to satisfy the non-obviousness requirement. *Compare United States Tel. Co.,* 204 U.S.P.Q. at 956.[1]

▋ Mr. Fitzgerald's response on the issue of patent validity rests on two principal misconstruals of the applicable law. First, Fitzgerald asserts that in a case of the sort before the court, a plaintiff challenging the validity of a patent cannot sustain its burden of proof by relying solely on evidence of prior art that was already considered by the PTO when it granted the application for the patent. Rather, the plaintiff must produce new material evidence of prior art. (Def.'s Mem. Opp.Pl.'s Mot. Partial Summ.J.Patent Invalidity at 3.) To support this view of the law, Fitzgerald cites *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.,* 796 F.2d 443, 447 (Fed.Cir.1986), *cert. denied,* 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987).

However, the cited language in *Bausch & Lomb* is based on an earlier Federal Circuit case, *American Hoist & Derrick Co. v. Sowa & Sons,* 725 F.2d 1350 (Fed.Cir.), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). All this case holds is that when a plaintiff challenging a patent chooses to rely solely on evidence that was previously considered by the PTO then that plaintiff "has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job." *Id.* at 1359. There are two reasons why this rule does not help the Defendant. First, the court is not relying solely upon the evidence that was presented to the PTO. Second, even with regard to the evidence previously considered by the PTO, Thomas America's presentation of this evidence is sufficiently detailed and thorough to overcome the deference that is due.

▋ Mr. Fitzgerald's second error involves his contention that much of Thomas America's evidence of prior art is immaterial because it is cumulative upon the evidence that Fitzgerald submitted to the PTO when he applied for his patents. (Def.'s Mem. Opp.Pl.'s Mot.Partial Summ.J.Patent Invalidity at 3–5.) The Defendant bases this argument on 37 C.F.R. § 1.56 (1993). This section governs the duty of a patent applicant to disclose material information. Section 1.56(b) does indeed limit material information to information that "is not cumulative to information already of record or being made of record in the application." *Id.* at § 1.56(b). However, this limitation is relevant to the extent of an applicant's duty to provide the PTO with adequate information for examining a patent application. Thus, it is not obvious that this regulation would control the question of what evidence a district court can consider in reviewing a challenge to the validity of a patent. Moreover, *American Hoist* clearly states that a court can indeed consider evidence of "new prior art not before the PTO." 725 F.2d at 1359. *See also Id.* at 1359–60. Thus, Fitzgerald's evidentiary challenges would appear to be of little avail.

---

1. Because the court concludes that Fitzgerald's design patents are invalid, there is no occasion to reach Thomas America's claim that it has not infringed these patents.

## II. Plaintiff's Motion for Partial Summary Judgment of Trademark Abandonment.

Plaintiff points to three agreements whereby Fitzgerald has licensed third parties to use the trademarks at issue in this case. The licensees cited are TT Systems Corporation, Formula Electronics Corporation and Hentak Limited. Plaintiff contends that under the involved agreements Fitzgerald has relinquished all formal control over the manufacture and quality of the telephones upon which his trademarks are placed. Moreover, Plaintiff asserts that there is no evidence that Fitzgerald actually controls, supervises, or inspects the quality of the products upon which his licensees place these trademarks. Given this uncontrolled, or naked, licensing, Plaintiff concludes that Fitzgerald has abandoned his trademarks.

■ The Lanham Act provides that a trademark registration may be cancelled where the trademark has become abandoned. 15 U.S.C. § 1064(3) (1988). The Act defines "abandoned" to include "[w]hen any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or to otherwise lose its significance as a mark." 15 U.S.C. § 1127. In interpreting this provision, the Second Circuit has held "that the Lanham Act places an affirmative duty upon a licensor of a registered trademark to take reasonable measures to detect and prevent misleading uses of his mark by his licensees or suffer cancellation of his federal registration." *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 366 (2d Cir.1959). *See also Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 43 (2d Cir.1986); *General Motors Corp. v. Gibson Chem. & Oil Corp.*, 786 F.2d 105, 110 (2d Cir.1986); *Power Test Petroleum Distrib. v. Calcu Gas, Inc.*, 754 F.2d 91, 97 (2d Cir.1985) Thus, a court examining the question of abandonment must determine whether the trademark owner has "sufficiently policed and inspected its licensees' operations to guarantee the quality of the products they sold under its trademarks to the public." *Dawn Donut*, 267 F.2d at 367. However, formal contractual authority to supervise and inspect is not required; rather, a trademark owner may refute a charge of abandonment by showing that she exercised *de facto* control over her licensees' operations. *Id.* at 368. *See also Syntex Lab., Inc. v. Norwich Pharmacal Co.*, 315 F.Supp. 45, 56 (S.D.N.Y.1970), *aff'd*, 437 F.2d 566 (2d Cir.1971) (noting that "[i]t has been held that reliance upon the integrity of a licensee is sufficient to fulfill the control requirement where a history of trouble-free manufacture provides a basis for such reliance").

■ Plaintiff relies mainly on the absence of any language in the licensing agreements at issue that would indicate any control retained by Fitzgerald. In addition, Plaintiff cites admissions by Fitzgerald as well as part of a 1992 amendment to the TT Systems license that suggest an affirmative surrender of control. (Mem.Supp.Pl.'s Mot.Part.Summ.J.Trademark Abandonment at 7–8; Fitzgerald Decl. at 1–2.) In response, the Defendant contends that currently there are only two licensees manufacturing his telephones—TT Systems and Hentak. (Tr. at 20–21.) Fitzgerald has supplied declarations from himself and from officers of these licensees, along with some other records, which support his claim that he has exercised at least some degree of *de facto* control over the quality of the products upon which these licensees place his trademarks. Defendant relies upon the same evidence to suggest that the history of his relationships with these licensees was such as to allow him to fulfill the control requirement by relying upon the integrity of these licensees. *See Syntex Lab., supra.* Furthermore, Fitzgerald also cites language in his agreement with Hentak that suggests that the latter was under a general duty to maintain certain standards of manufacturing quality. (See Gleason Decl., Ex. O at 3.)

While Mr. Fitzgerald's response to the allegations regarding Formula Electronics is minimal, he has, over all, done a considerably better job of answering the Plaintiff's arguments concerning trademark abandonment than he has done in the patent context. Especially since Fitzgerald is acting pro se in

this matter, the court cannot conclude that he has raised no triable issue of material fact regarding the issue of whether he has sufficiently policed and inspected his licensees' operations to guarantee the quality of the products they sold under his trademarks to the public.

### CONCLUSION

For all of the above reasons, the plaintiff's motion for partial summary judgment of patent invalidity and unenforceability is granted. Plaintiff's motion for partial summary judgment of trademark abandonment is denied.