**LEEANDY DEVELOPMENT CORP. and Philip Wolikow, Plaintiffs,**

v.

**TOWN OF WOODBURY, Gary Thomasberger, Individually and as Building Administrator of the Town of Woodbury, Joan Caruso, Individually and as Supervisor of the Town of Woodbury, Dennis G. Lindsay, Individually and as Town of Woodbury Town Engineer, John Keleman, Harry Dobson, James Galvin, and Frank Palermo, Individually and as Councilmen of the Town of Woodbury, Defendants**

**No. 99 CIV 11464 BDP.**

United States District Court, S.D. New York.

March 15, 2001.

John S. Edwards, Tracy Bertolino & Edwards, New City, NY, for Plaintiff.

David D. Hagstrom, Van De Water & Van De Water, Mill & Garden Streets, Poughkeepsie, NY, Kerry Ann Johnson, Gogick & Seiden, New York City, for Defendant.

**MEMORANDUM DECISION AND ORDER**

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiffs, involved in real estate development in Woodbury N.Y., commenced this lawsuit challenging various permit and

land use decisions of the Town, alleging violations of 42 U.S.C. § 1983. Specifically, the Complaint alleges that Defendants, acting under color of law, deprived Plaintiffs of their substantive due process rights under the Fourteenth Amendment of the United States Constitution.

Before this Court are two motions for summary judgment, one on behalf of the Town of Woodbury (the "Town"), Gary Thomasberger, Joan Caruso, John Keleman, Harry Dobson, James Galvin and Frank Palermo, and the other on behalf of Dennis Lindsay, an engineering consultant retained by the Town. *See* Fed.R.Civ.P. 56. For the following reasons, defendants' motions are granted.

## BACKGROUND

On a motion for summary judgment, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The following facts are construed accordingly.

Plaintiff Leeandy Development Corp. ("Leeandy"), a New York corporation engaged in real estate development and residential construction, was formed in March 1985. Co–Plaintiff Philip Wolikow owned 75% of its shares and Samuel Deutsch, now deceased, owned the remaining 25%. The Defendants include the Town and a number of Town officials, including the Town's engineer.

On April 16, 1986, Modern Realty Company conveyed to Leeandy a 27–acre parcel of land, later known as the Woodbury Estates. In August 1986, the Town's Planning Board granted final subdivision approval for the development of a 35–lot subdivision, subject to a number of conditions, including, *inter alia,* Condition # 2, which required that a drainage channel be installed along the "green" area of the plot, subject to later relocation.

## I. *Woodbury's Sewage System*

During the course of the approval process, Plaintiffs received permission from the New York State Department of Environmental Conservation (the "State DEC") to connect all 35 homes in the proposed subdivision to the Town's sewer system, as well as approval from Orange County (the "County") for the design of the system. On September 22, 1987, the Town's Sewer Department issued a permit authorizing Plaintiffs to connect all 35 proposed homes in the Woodbury Estates to the Town sewer system. After the receipt of these approvals, Plaintiffs expended more than $1 million on land acquisition, approvals, and infrastructure improvements.

The Town's sewer system was, and still is, connected to the Harriman Wastewater Treatment Plant (the "Harriman Plant"), which treats sewage from a number of different municipalities in the area. In 1978, the Town entered into a cooperation agreement with a number of surrounding municipalities (the "Cooperation Agreement") for the administration, design, construction and joint use of the Harriman Plant. *See* General Municipal Law, Article 5–G, § 119–o. In 1988, the Cooperation Agreement was amended to limit the access of participating municipalities to the Harriman Plant. Specifically, the agreement provided that "no new users will be permitted to hook into any local municipal sewer system without a permit issued by the County." Amendment to the Cooperation Agreement dated September 8, 1988, ¶ 3.

On September 21, 1988, the State DEC wrote to the Orange County Department

of Public Works stating that the ban on new sewer connections would not apply to "Projects that received Formal Final Approval from a legitimate governmental body prior to the issuance of this letter." That letter provided that the Woodbury Estates subdivision was exempted from the sewer connection ban in the Cooperation Agreement amendment because it had previously received a final approval from a local Planning Board. As a result of this clarification from the state, the Town approved building permits for lots requested by Plaintiffs in 1988 through the mid–1990s.

By 1996, the County, which monitored the average daily demand on the sewer system made by each municipality, informed the Town and other local municipalities than the Harriman Plant was operating at or near capacity. As a result, in a letter dated September 27, 1996, the County imposed its own moratorium on new sewer connections, under which no new connections would be authorized without County approval. By June 30, 1997, the Town was significantly exceeding its contractually allocated capacity at the Harriman Plant and this County-imposed moratorium continues to date.

## II. *The 1994 Agreement*

On September 7, 1994, Leeandy entered into an agreement with the Town Board regarding the snow plowing, sweeping, dedication and acceptance of two roads in the Woodbury Estates, Jefferson Street and Lincoln Court (the "1994 Agreement"). Paragraph 7 of the 1994 Agreement provided that when four vacant building lots remained, Leeandy would complete the roads for dedication to the Town or post a bond to guarantee completion. Failure to complete the road or to post the bond

would result in the suspension of building permits for construction on those lots.[1]

On July 23, 1997, Leeandy re-confirmed and ratified the 1994 Agreement in a letter to the Town Supervisor (Defendant Joan Caruso), which stated:

> We hereby reaffirm that we are legally bound and obligated to complete the improvements in [Woodbury Estates] and to dedicate the roads and other improvements in the subdivision to the Town of Woodbury. We further confirm that we will honor our agreement with the Town dated September 4, 199[4], and in particular paragraph 7 of the agreement which states we will complete the roads and other improvements in the subdivision prior to asking for certificates of occupancy for the last four lots.

## III. *Town's Failures to Grant Building Permits and Certificates of Occupancy*

The Complaint alleges that Defendants' conduct in 1997 and 1998 resulted in a deprivation of Plaintiff's substantive due process rights under the Fourteenth Amendment. Plaintiffs classify their claims into three separate incidents, each of which allegedly constitutes a substantive due process violation.

### A. Town's Refusal to Approve Building Permits For Lots 5, 7 and 35 Due to Lack of Sewer Connection

As the housing market began to improve in the mid–1990s, Plaintiffs applied for building permits in late June and early July 1997 for houses to be built upon lots 5, 7 and 35 in the Woodbury Estates. After checking with the Orange County Department of Environmental Facilities and Services (the "County DEFS"), Gary

---

**1.** Paragraph 8 of the 1994 Agreement provided that in the event of failure to complete the road or post the bond, Leeandy would be permitted to erect foundations on the four lots, but would not be permitted to continue further until either condition was satisfied.

Thomasberger, the Town's Building Administrator, advised Plaintiffs that although sewer connections for all 35 lots were approved by the Town in 1987, building permits could not be issued because, under the 1996 sewer moratorium, the County would not approve sewer connections.[2]

When Plaintiffs notified Town and County officials that New York state had clarified that the Woodbury Estates were exempt from the 1988 ban on new sewer connections, the County DEFS wrote Plaintiffs on July 10, 1997 stating that conditions in 1997 were "markedly different." That letter repeated the concerns of overcapacity mentioned in the County's September 27, 1996 letter to the Town, and stated that,

> Presently . . . the treatment plant is operating nearly 500,000 gallons per day over capacity and, more importantly, the Town of Woodbury has no capacity available to it under the intermunicipal agreements. Under the agreements, the Town of Woodbury administers its permit system and has a limited allocation of capacity; the sewer district's role in issuing permits pursuant to the agreement is limited to a determination of whether there is capacity available. Unfortunately, therefore, I cannot agree at this time to allow the connections you are requesting.

Accordingly, the County, by enforcing the 1996 moratorium, effectively ended the exemption previously available to the Woodbury Estates.

Nevertheless, Plaintiffs commenced construction on both lots without building permits on July 18, 1997. On July 22, the Town Supervisor, Defendant Joan Caruso, informed Plaintiffs that the Town would authorize the issuance of the building permits if it received assurances that Plaintiffs would complete the dedication of the roads pursuant to their 1994 agreement. When a consensus could not be reached on finishing the roads, the Building Administrator, on July 24, 1997, delivered Leeandy a stop work order, and Plaintiffs, on July 30, 1997, instituted an Article 78 proceeding against the Town in the New York State Supreme Court of Orange County. On August 14, 1997, the Building Administrator, in compliance with the Town Board's directives and despite the County's refusal to permit new sewer connections, issued building permits for lots 7 and 35.

Plaintiffs' Article 78 proceeding sought to compel the Building Administrator to issue building permits for lots 7 and 35 and to prohibit the Town Superintendent and the County DEFS from interfering with this process. Both the County and the Town argued that they were not able to issue building permits due to, in part, contractual obligations imposed by the intermunicipal Cooperation Agreement.

On January 8, 1998, the Honorable Peter Leavitt, New York Supreme Court, Orange County, granted the petitioner relief, and directed the Building Administrator to issue the requested building permits. Justice Leavitt first noted that it was the Town's responsibility, not the County's, to issue building permits, and that this responsibility could not be delegated. Next, the court found relevant that the Cooperation Agreement was signed by the Town one year after the Town had initially approved Plaintiffs' sewer connections in 1987. Having already issued the sewer permits, that Court found that it

---

**2.** Defendants contend that under the Town Code, a building permit may only be issued after the property owner has properly demonstrated that it has provided for adequate sewer and water. Although no local ordinance is specifically cited, Plaintiffs do not dispute this contention.

was the Town's "responsibility to account for their inevitable utilization after the execution of the intermunicipal agreement effectively imposed a limit on the total number of connections which could be permitted." *Leeandy Development Corp. v. Thomasberger,* Ind. No. 5362/97, Slip. Op. at *6 (Sup.Ct. Orange Co. January 9, 1998).

On April 14, 1998, the Building Administrator issued building permits for a number of other lots, including lot 5, as well as lots 6, 13, 14 and 31.

B. Town's Refusal to Grant Certificates of Occupancy for Lots 13 and 14 Due to Failure to Complete Drainage Channel

On July 23, 1998, Plaintiffs requested certificates of occupancy for homes on lots 13 and 14 that had been constructed and sold. Plaintiffs contend that on that day, the Building Administrator, together with Wolikow, inspected the homes and indicated that certificates could issue. On July 24, however, Plaintiffs were informed that the certificates would be denied—at the direction of Defendant Dennis Lindsay, the Town's engineering consultant—because Condition # 2 to the Town Board's 1986 subdivision approval, which required that a drainage channel be installed along the "green" area of the plot, had not been satisfied. The parties concede that the failure to satisfy that condition resulted in complaints from neighboring property owners about flooding caused by run-off waters from the Woodbury Estates.

Plaintiffs contend that the drainage channel requirement had been waived by the previous Town engineer in 1987. Although no documentation directly supports a waiver, Plaintiffs contend that the waiver

was oral and probably occurred "in the field."[3] *See* Affidavit of Joseph Deutsch, at ¶ 83. Moreover, Plaintiffs advised Lindsay that even if the requirement had not been waived, a diversion channel could not be installed because part of the ditch had to be installed in an area owned by another entity, which was encumbered by a Town mandated restrictive covenant that prohibited any activity that disturbed the land. Also, Plaintiffs noted that the Town had adopted a local law that made it illegal to excavate in the green area and that the Woodbury Estates' charter barred construction of the drainage channel.

Plaintiffs contend that in order to avoid losing the sales on the houses on lots 13 and 14, they agreed to install an underground 15-inch pipe (in lieu of a drainage channel) if the Town would issue the certificates of occupancy and if any legal impediments to the installation of the pipe were removed. Accordingly, on July 29, 1998 (six days after the certificates were first requested), the Town issued the certificates of occupancy. To date, the drain pipe has not been constructed because the Town has not yet obtained the easements required to permit Plaintiffs to install the pipe, and has not yet repealed the law that bars excavation in the green area.

C. Town's Refusal to Approve Building Permits on Lots 20 and 21 Because Dedication of the Roads were not Satisfactorily Completed

On June 2, 1998, Plaintiffs applied for building permits for houses to be constructed on lots 20 and 21, two of the last four lots to be developed in the Woodbury Estates. The Building Administrator refused to issue the permits because Plain-

---

3. Plaintiffs eventually produced a letter, dated June 24, 1988, from the previous Town engineer listing the items of work that still needed to be done at Woodbury Estates. The ab-

sence from mention of the drainage channel established, according to Plaintiffs, that Condition # 2 had been waived.

tiffs had failed to complete construction of the roads as required by the 1994 Agreement (and acknowledged by Leeandy in its June 23, 1997 letter). Accordingly, Plaintiffs began work on the roads, and completed construction on October 22, 1998.

Notwithstanding the completion of the roads, the Town refused to issue building permits, contending that neither the subdivision nor the roads were completed to what the Town's engineering consultant, Lindsay, considered acceptable standards. Lindsay's position was detailed in a letter dated November 19, 1998, which listed seven areas of deficiency. The letter also noted that the pavement was not satisfactorily completed and that the road surfaces contained many cavities that could collect water and freeze causing premature road distress.

Plaintiffs contend that the roads were satisfactory, and that Lindsay improperly reached these conclusions, despite the fact that Plaintiffs had followed his instructions regarding road paving and despite Town officials having periodically inspected the road work. In a follow-up letter dated December 14, 1998, Lindsay questioned the competence of the paving contractor and reiterated that the roadwork was "not up to the standards which the Town should accept." To date, the roads have not been accepted.

## IV. *This Action*

Plaintiffs commenced this action in November 1999, contending that Defendants' failures to grant the building permits and certificates of occupancy on a timely basis violated Plaintiffs' rights to substantive due process under the Fourteenth Amendment. Defendants move for summary judgment.

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. As previously stated, all ambiguities and inferences should be resolved in favor of Plaintiffs, and all doubts as to the existence of a genuine issue for trial should be resolved against Defendants. *Brady*, 863 F.2d at 210.

The mere existence of an alleged factual dispute between the parties will not defeat a motion for summary judgment. *Terry v. United States*, No. 98 Civ. 8249(NRB), 2000 WL 204522, *3 (S.D.N.Y. Feb.18, 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

Once the movant satisfies his initial burden by "pointing out the absence of evidence to support the nonmovant's claims," *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir.1991) (citations omitted), the nonmoving party must affirmatively set forth facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 246, 106 S.Ct. 2505. Accordingly, the nonmoving party must produce sufficient evidence to show "that a reasonably jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. A demonstration of "some metaphysical doubt as to the material facts" is insufficient to defeat a "Motion for Summary Judgment." *Matsushita Electric Industrial Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Moreover, the nonmoving party may not simply rely upon "[s]peculation, conclusory allegations, and mere denials

... to raise genuine issues of [material] fact." *National Westminster Bank v. Ross*, 676 F.Supp. 48, 51 (S.D.N.Y.1987). "Rather, the nonmoving party 'must provide concrete particulars showing that a trial is needed, and it is not sufficient merely to assert a conclusion without supplying supporting arguments or facts.'" *Thomas America Corp. v. Fitzgerald*, 869 F.Supp. 221, 223 (S.D.N.Y.1994) (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (internal quotations omitted)).

## II. *Substantive Due Process*

■ In context of land use disputes, this Court is mindful of the "general proscription that federal courts should not become zoning boards of appeal." *Zahra v. Town of Southold*, 48 F.3d 674, 679–80 (2d Cir. 1995). To state a substantive due process claim for wrongful denial of a permit, Plaintiffs must satisfy a rigorous two-pronged test. They must show, first, "that [they] had a valid 'property interest' in a benefit that was entitled to constitutional protection at the time [they were] deprived of that benefit," and, second, "that the Town's action in depriving [them] of that interest was so outrageously arbitrary as to be a gross abuse of governmental authority." *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir.1999) (internal quotations omitted). Because the Court finds that Plaintiffs do not satisfy the second prong, it does not address the first.

Our Court of Appeals recently acknowledged the difficulties litigants face in demonstrating the arbitrary conduct necessary to establish a substantive due process violation. In *Natale v. Town of Ridgefield*, 170 F.3d 258 (2d Cir.1999), a home builder alleged that the Town of Ridgefield and its zoning commission had violated plaintiff's substantive due process rights by refusing to issue certain zoning and building permits in the absence of subdivision approv-

al. At trial, a jury found for plaintiff and awarded $1 million in damages for lost profits and emotional distress.

The Court of Appeals reversed and remanded, instructing the district court to dismiss the complaint, finding that the trial judge erred by instructing the jury that the plaintiff need only show that it was entitled to the permits as a matter of state law, and that defendants denied them. According to the *Natale* court, a claim for substantive due process,

"is not established simply by proving that someone did not obtain what he or she is entitled to under state law. For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels "arbitrary" and "outrageous" ... Substantive due process ... *does not forbid governmental actions that might fairly be deemed arbitrary or capricious* and for that reason correctable in a state court lawsuit seeking review of administrative action. *Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority*."

*Id.* at 262–63 (citations and internal quotations omitted) (emphasis added). *Natale* thus makes clear that substantive due process claims are reserved for conduct on the "outer limit [of] the legitimacy of governmental action." *Id.* at 263.

■ Here, none of the incidents described by Plaintiffs, individually or in the aggregate, satisfy this high standard. In each of the three instances of alleged misconduct, the Town has presented unquestionably colorable legal or contractual reasons for their denial of the permits or certificates at issue. The facts that Defendants' positions may not have been fully grounded in state law, may have been incorrect or, indeed, may have been arbi-

trary, is not sufficient to establish the denial of substantive due process. Even "[a]rbitrary conduct that might violate zoning regulations ... is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause." *Id.* at 262; *see also Southview Assoc., Ltd. v. Bongartz,* 980 F.2d 84, 103 (2d Cir.1992) ("If the Board had at least debatable grounds [for its conduct], the Board did not act arbitrarily and capriciously and did not deprive [plaintiff] of substantive due process."); *Brady,* 863 F.2d at 216 ("[W]e do not suggest ... that a wronged party has a valid claim for a constitutional deprivation every time a local zoning board makes an incorrect decision"); *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822, 833 (1st Cir.1982) (holding that most real estate planning disputes do not implicate the Constitution even where planning officials "clearly violate ... the state scheme under which they operate."); *Welch v. Paicos,* 66 F.Supp.2d 138, 167 (D.Mass.1999) ("Even when a planning board abuses its discretion, or disobeys state law in some other manner, the federal courts will not automatically find a due process violation.").

For example, with respect to the Town's denial of building permits for lots 5, 7 and 35 because of lack of sewer connection approvals, Plaintiffs do not dispute the fact that both the Town and the County (not a party here) believed that sewer connections, and therefore building permits, could not be properly granted under the terms of the Cooperation Agreement due to overcapacity at the Harriman Plant. There is no doubt that the Town was under a contractual obligation to other municipalities not to exceed its allotted daily capacity, and it is undisputed that the Town had been exceeding its allotment for years. To be sure, a state court held that these contractual considerations did not justify withholding permit approval. But this determination falls well short of establishing that the Town's conduct was sufficiently egregious to amount to a constitutional deprivation. *See Natale,* 170 F.3d at 264 (finding no substantive due process violation despite the fact that state court had previously granted mandamus relief in favor of plaintiff); *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1221 (6th Cir.1992) ("[T]he state court scope of review of a decision of a state administrative agency is far broader than the federal scope of review under substantive due process.... In the federal court the standard [of arbitrary conduct] is a much narrower one.").

Similarly, the undisputed evidence shows that the Town had good faith reasons to delay the issuance of certificates of occupancy for lots 13 and 14. Plaintiffs do not dispute that the six-day delay was based upon the independent engineering expert's conclusion that Plaintiffs had agreed in August 1986 to install a drainage channel. The fact that the engineer was not immediately persuaded by Plaintiffs' waiver argument is not an arbitrary denial, and, in any event, is not the kind of "conscience-shocking" conduct proscribed by the Constitution. Furthermore, Leeandy's argument that the legal impediments made it impossible for Plaintiffs to construct a drainage channel in the green area—while significant—is simply not conscience shocking. Indeed, the parties themselves managed to get around this problem by conditioning the construction of the drain on the Town's future ability to remove these legal impediments. In the end, the Town granted the certificates less than one week after they were first requested.

The Town also had good faith reasons to require that the roads be completed before permits could be issued for lots 20 and 21. Plaintiffs do not dispute that they were under a contractual obligation to construct and dedicate the roads under the 1994

Agreement. Whether the Town properly concluded that the roads were sub-standard presents a *bona fide* dispute concerning the scope and intent of the 1994 Agreement, but not one which indicates a constitutional violation.

Moreover, Plaintiffs make no showing of any impermissible animus on the part of Defendants. *See Catanzaro v. Weiden,* 188 F.3d 56, 64 (2d Cir.1999) ("Absent some evidence of a culpable state of mind on the part of Defendants, ... no reasonable trier of fact could find this [conduct] to be arbitrary, conscience-shocking or otherwise constitutionally oppressive."); *Ferran v. Town of Poestenkill,* 234 F.3d 1261, 2000 WL 1728080, *3 (2d Cir. Nov.17, 2000) ("Although we take no position on whether maliciousness is a requisite component of a substantive due process violation, *Lewis,* 523 U.S. 833, 849, 118 S.Ct. 1708 (1998), makes clear that more than mere negligence is required, and thus *a fortiori,* failure to prove the defendant's state of mind will be fatal to the claim."); *see also Silverman v. Barry,* 845 F.2d 1072, 1080 (D.C.Cir.1988) ("Only a substantial infringement of state law prompted by personal or group animus, or a deliberate flouting of the law that trammels significant personal or property rights, qualifies for relief."); *cf. Brady,* 863 F.2d at 216 (denying defendant's summary judgment motion because "the facts of this case suggest that plaintiffs may be able to prove that they were denied a permit and use of their property not because of a good faith mistake ... about the applicable law, but because of indefensible reasons such as impermissible political animus.").

Taken in its best light, Plaintiffs' evidence shows that the Town's legal reasoning may have been faulty, and, at times, mistaken. But, there is no material admissible evidence that the Town was animated either by an impermissible animus or acted at the "gross abuse" level of egregiousness required under the law of our Circuit to establish a violation of substantive due process. *See Catanzaro,* 188 F.3d at 64 ("Plaintiffs–Appellants must show that the government action was arbitrary, conscience-shocking, or oppressive in a constitutional sense, and not merely incorrect or ill-advised.") (internal quotations omitted); *see, e.g., County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) ("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense."); *Pearson,* 961 F.2d at 1221 ("To prevail, a plaintiff must show that the state administrative agency has been guilty of arbitrary and capricious action in the strict sense, meaning that there is no rational basis for the ... decision."); *Creative Environments,* 680 F.2d at 833 ("[T]he conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus, or the like—which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution"). Plaintiffs' evidence simply does not meet these onerous standards.

### CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are granted.[4] The Clerk of the Court is ordered to enter judgment for Defendants.

SO ORDERED.

---

4. In view of the dismissal of all federal claims, the Court dismisses the state law claims asserted herein, if any, without prejudice. *See Baylis v. Marriott Corp.,* 843 F.2d

658, 665 (2d Cir.1988) ("[w]hen all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims").