■ ALEXANDER AVENUE KOSHER RESTAURANT CORP., Respondent, v RONALD DRAGOON et al., Appellants, et al., Defendant. [762 NYS2d 101] —In an action to enjoin the defendants from interfering with the plaintiff's use of certain trademarks, the defendant/counterclaim plaintiff, Ronald Dragoon, and the counterclaim plaintiffs, 933 Atlantic Ave. Kosher Rest. Corp., Wheatley Kosher Restaurant Corp., 437 North Broadway Kosher Delicatessen, Inc., Bay Terrace Kosher Restaurant Corp., West 38 Kosher Deli, Inc., Ben's Kosher Deli Express of Freeport, Inc., Woodbury Village Kosher Restaurant, Inc., Ben's Kosher Deli of Walt Whitman, Inc., and Ben's Deli Express of Roosevelt Field, Inc., appeal from so much of an order of the Supreme Court, Suffolk County (Cohalan, J.), dated June 8, 2001, as denied their motion for summary judgment on their first, second, and third counterclaims, and granted the plaintiff's cross motion for summary judgment dismissing the counterclaims, and the defendant, Ronald Dragoon, separately appeals, by permission, from so much of the same order as, sua sponte, vacated so much of a preliminary injunction granted by

order of the same court dated October 15, 1999, as restrained the plaintiff from using his likeness in its advertising.

Ordered that the order is modified by (1) deleting the provision thereof granting the cross motion, and substituting therefor a provision denying the cross motion, and (2) deleting the provision thereof denying that branch of the motion of the defendant/counterclaim plaintiff, Ronald Dragoon, and the counterclaim plaintiffs which was for summary judgment on the third counterclaim, and substituting therefor a provision granting that branch of the motion, (3) deleting the provision thereof, sua sponte, vacating so much of the preliminary injunction as restrained the plaintiff from using the likeness of the defendant/counterclaim plaintiff, Ronald Dragoon, in its advertising; as so modified, the order is affirmed, with one bill of costs to the defendant/counterclaim plaintiff, Ronald Dragoon, and the counterclaim plaintiffs.

In 1988 Pasquale Ruggiero purchased Alexander Avenue Kosher Restaurant Corp., the plaintiff corporation, from the defendant/counterclaim plaintiff Ronald Dragoon and Leon Rubenstein. As part of their contract, the parties acknowledged that the name " 'Ben's and/or Ben's Deli' and/or 'Ben's Kosher Restaurant' " and the Ben's logo (hereinafter the Marks) were the sole property of Dragoon, who granted the plaintiff a license to use the Marks in connection with the restaurant (hereafter the Lake Grove restaurant). This grant was conditioned, in relevant part, on Ruggiero and the plaintiff corporation operating the business as a strictly kosher food establishment in the Lake Grove Shopping Center. The contract also provided that the continuing license would expire if the owners of the Lake Grove restaurant were found to have committed health code violations and fined in excess of $500.

According to Dragoon and the other counterclaim plaintiffs (hereinafter collectively Ben's), in 1997 and 1998 the plaintiff committed violations of the State and County health laws for which it was fined in excess of $500. By letter dated November 16, 1998, Ben's counsel sent the plaintiff a Notice of Termination/Infringement, demanding that the plaintiff immediately cease all use of the Marks, and withdraw all advertising and promotional materials featuring the Marks. Ben's also attempted to have its suppliers stop providing the plaintiff with materials featuring the Marks.

The plaintiff then commenced this action to enjoin Dragoon and Robert David, Dragoon's current business associate, from interfering with its use of the Marks in connection with the Lake Grove restaurant. Ben's answer included counterclaims

accusing the plaintiff of trademark infringement, dilution, and violation of the right of publicity. By order dated October 15, 1999, the Supreme Court granted a preliminary injunction permitting the plaintiff "unfettered access to the logo, designs and advertising material" pending the trial, but denied the plaintiff use of Dragoon's likeness in any advertising material.

Ben's moved for summary judgment on its first counterclaim pursuant to General Business Law § 360-*l* (originally mislabeled by Ben's as section 368-*l*), its second counterclaim alleging violation of section 43 (a) of the Lanham Act (15 USC § 1125 [a]), and its third counterclaim, based upon the common law. By order dated January 8, 2001, the Supreme Court denied Ben's motion, granted the plaintiff's cross motion to dismiss those counterclaims, and, sua sponte, vacated the preliminary injunction.

Before it can prevail on any of the counterclaims at issue, Ben's must have properly terminated a valid licensing agreement for the use of a mark that is protectable.

To be capable of legal protection, a mark must be shown to be of distinctive quality or one which has, in the public's mind acquired a secondary meaning (*see Allied Maintenance Corp. v Allied Mech. Trades,* 42 NY2d 538, 545 [1977]). Marks that are personal names, such as the one at issue here, are generally viewed as descriptive terms that require proof of secondary meaning (*see 815 Tonawanda St. Corp. v Fay's Drug Co.,* 842 F2d 643 [1988]). Contrary to the conclusion reached by the Supreme Court, Ben's established that its Marks have a secondary meaning: Ben's engages in extensive advertising, in amounts that average $450,000 a year; Ben's has had exclusive use of the Marks for kosher restaurants in the New York City/ Long Island area since 1973; and Ben's has had substantial sales success. Ben's has 12 wholly-owned subsidiaries, seven of which are full-service restaurants located in New York City and on Long Island with sales of $23 million in 1999 (*see Bristol-Myers Squibb Co. v McNeil-P.P.C., Inc.,* 973 F2d 1033, 1041 [1992]; *Wyndham Co. v Wyndham Hotel Co.,* 176 Misc 2d 116, 117 [1997], *affd* 261 AD2d 242 [1999]; *see also Centaur Communications v A/S/M Communications,* 830 F2d 1217, 1223 [1987]).

In addition to a mark being strong enough to warrant protection, a licensor must have some quality control of the goods produced by the licensee. Otherwise, the licensor has engaged in uncontrolled or "naked" licensing which can cause a mark to lose its meaning (*see Stanfield v Osborne Indus.,* 52 F3d 867 [1995], *cert denied* 516 US 920 [1995]). A very high burden is

placed on a party who asserts insufficient control because such a finding results in the forfeiture of the trademark which is deemed abandoned (*see Kentucky Fried Chicken Corp. v Diversified Packaging Corp.,* 549 F2d 368 [1977]). Although the plaintiff's restaurant was independently operated, Ben's demonstrated sufficient quality control over the use of its Marks to satisfy its burden on this issue. In addition to terms of quality control in the licensing agreement (such as the requirements that the plaintiff maintain strictly kosher premises, and of substantial compliance with health code rules and regulations) and a variety of activities (including training the plaintiff's employees and sharing its menus and its vendors with the plaintiff), the defendant sold the Lake Grove restaurant to Ruggiero, its former manager, and could rely on Ruggiero's ability to maintain the restaurant's standards (*see Stock Pot Rest. v Stockpot, Inc.,* 737 F2d 1576, 1580 [1984]; *Thomas Am. Corp. v Fitzgerald,* 869 F Supp 221, 226 [1994]; *Syntex Labs. v Norwich Pharmacal Co.,* 315 F Supp 45, 56 [1970], *affd* 437 F2d 566 [1971]). Ben's also demonstrated that the plaintiff violated the terms of the licensing agreement by incurring fines in excess of $500 in 1997 and 1998.

Turning to the counterclaims, Ben's made a prima facie showing of its entitlement to summary judgment on its common law claim by demonstrating a likelihood of confusion from the plaintiff's unauthorized use of its Marks (*see Bristol-Myers Squibb Co. v McNeil-P.P.C., Inc., supra* at 1048). The plaintiff failed to show the existence of a material fact sufficient to require a trial on these issues (*see Alvarez v Prospect Hosp.,* 68 NY2d 320 [1986]). Nor does equity require a different result.

The other counterclaims reinstated by this decision and order, to the extent that they are not now academic, require resolution based on findings of fact or the application of legal doctrines that are not properly before this Court (*see Orellano v Samples Tire Equip. & Supply Corp.,* 110 AD2d 757 [1985]).

Finally, the Supreme Court improvidently vacated so much of the preliminary injunction as restrained the plaintiff from using Ronald Dragoon's likeness in its advertising. This additional relief was neither requested in the plaintiff's cross motion for summary judgment nor related to the relief requested therein (*see Northside Studios v Treccagnoli,* 262 AD2d 469 [1999]). Ritter, J.P., Santucci, Goldstein and Mastro, JJ., concur.