ENTERPRISE RENT–A–CAR
COMPANY, Appellant,

v.

ADVANTAGE RENT–A–CAR,
INC., Appellee.

No. 02–1444.

United States Court of Appeals,
Federal Circuit.

DECIDED: May 30, 2003.

Rehearing En Banc Denied: July 9, 2003.

Rudolph A. Telscher, Jr., Harness, Dickey & Pierce, P.L.C., of St. Louis, Missouri, argued for appelllant.

William D. Raman, Thompson & Knight LLP, of Austin, Texas, argued for appellee.

Before BRYSON, GAJARSA, and DYK, Circuit Judges.

DYK, Circuit Judge.

Under the Trademark Amendments Act of 1999 § 2(b), 15 U.S.C. § 1063(a), and the Federal Trademark Dilution Act of 1995 § 3, 15 U.S.C. § 1125(c), the owner of a famous mark can oppose the registration of a diluting mark without establishing likelihood of confusion. This case presents the question whether such an opposition can be maintained when the applicant's mark was used in a limited geographic area before the opposer's mark became famous. This case also requires us to decide whether an opposition under 15 U.S.C. § 1063(a) can be based on claims of trademark dilution under state dilution statutes. We conclude that the owner of a famous mark cannot oppose registration based on dilution where its mark did not

achieve fame prior to the applicant's prior use in a limited geographic area, and that a trademark holder cannot oppose registration based on claims of dilution under state law. We therefore affirm the decision of the United States Patent and Trademark Office, Trademark Trial and Appeal Board ("the Board") dismissing the opposition with prejudice.

## BACKGROUND

This case requires us to construe for the first time the Federal Trademark Dilution Act of 1995, 15 U.S.C. §§ 1125(c), 1127 (2000) ("FTDA"), which creates a federal cause of action for trademark dilution, and a related provision, the Trademark Amendments Act of 1999, Pub. L. No. 106–43, 113 Stat. 218 (codified in scattered sections of 15 U.S.C.), which, *inter alia*, requires the Board to consider dilution under the FTDA as a ground for opposition to trademark registration.

The FTDA provides a federal cause of action for owners of "famous" trademarks, allowing them to enjoin diluting uses, and in some cases, to recover monetary damages. The Act provides:

> [t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, *if such use begins after the mark has become famous* and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.

15 U.S.C. § 1125(c)(1) (2000) (emphasis added).[1] Thus, in order to secure relief,

the owner of a famous mark must establish that the allegedly diluting use began "after the mark ha[d] become famous." The Act provides a list of non-exclusive factors that a court is to consider in determining whether a mark is "famous" and, therefore, qualifies for protection under the statute:

> In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to—
>
> (A) the degree of inherent or acquired distinctiveness of the mark;
>
> (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
>
> (C) the duration and extent of advertising and publicity of the mark;
>
> (D) the geographical extent of the trading area in which the mark is used;
>
> (E) the channels of trade for the goods or services with which the mark is used;
>
> (F) the degree of recognition of the mark in the trading areas and channels of trade used by the mark's owner and the person against whom the injunction is sought;
>
> (G) the nature and extent of use of the same or similar marks by third parties; and
>
> (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.* § 1125(c)(1).

In 1999, Congress amended the Lanham Act to add dilution under section 1125(c) as

---

1. The Act allows for monetary damages only if "the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark." 15 U.S.C. § 1125(c)(2) (2000).

a ground for opposition to federal trademark registration. *See* Trademark Amendments Act of 1999, § 2(b), 113 Stat. 217, 218. The opposition statute now provides, in pertinent part, "[a]ny person who believes that he would be damaged by the registration of a mark upon the principal register, *including as a result of dilution under section 1125(c) of this title*, may ... file an opposition in the Patent and Trademark Office." 15 U.S.C. § 1063(a) (2000) (emphasis added).

The allegedly diluting use in this case began in 1990, when the appellee (the applicant for registration), Advantage Rent–A–Car, Inc. ("Advantage"), produced a television commercial for its car-rental service that used the phrase "We'll Even Pick You Up." The commercial was broadcast in the San Antonio, Texas, area approximately 100 times between 1992 and 1995. From August 1997, to April 1998, the commercial was broadcast an additional 289 times in Arkansas, Louisiana, New Mexico, and Texas.

The appellant (the party opposing registration), Enterprise Rent–A–Car Co. ("Enterprise"), did not begin using the phrases "Pick the Company that Picks You Up" and "Pick Enterprise, We'll Pick You Up" in national advertising until 1994, after Advantage's prior use in San Antonio, Texas. On January 16, 1996, Enterprise obtained federal registration for the mark "PICK ENTERPRISE, WE'LL PICK YOU UP," U.S. Trademark Reg. No. 1,948,828; on January 30, 1996, for the mark "PICK THE COMPANY THAT PICKS YOU UP," U.S. Trademark Reg. No. 1,953,083; and on August 5, 1997, for the mark "WE'LL PICK YOU UP," U.S. Trademark Reg. No. 2,085,472, as service marks in connection with the rental and leasing of vehicles.

On June 16, 1998, Advantage filed suit against Enterprise in the United States District Court for the Western District of Texas alleging unfair competition in violation of 15 U.S.C. § 1125(a) and under the common law of Texas and seeking cancellation of Enterprise's mark under 15 U.S.C. § 1119. Enterprise, *inter alia*, counterclaimed for unfair competition under state and federal law and for trademark dilution under federal and state law.

While the case was pending in the district court, on May 4, 1999, Advantage filed for federal registration of its mark, "We'll Even Pick You Up," as a service mark in connection with the rental and leasing of vehicles. U.S. Trademark Application Ser. No. 75–697875. On August 21, 2000, Enterprise filed an opposition to Advantage's application, alleging that it would be damaged by the registration of Advantage's mark, because Advantage's mark caused dilution of Enterprise's mark under the FTDA. The Board suspended the opposition proceedings on September 25, 2000, pending resolution of the civil action before the district court.

On May 24, 1999, the parties agreed to the entry of a partial consent judgment in the district court civil action. The parties agreed to the entry of findings of fact and conclusions of law to the effect that the use by Advantage of WE'LL EVEN PICK YOU UP in connection with its car-rental business was not likely to cause consumer confusion with Enterprise. *Advantage Rent–A–Car, Inc. v. Enterprise Rent–A–Car Co.*, No. A 98CA 372, slip op. at 1–2 (W.D.Tex. May 24, 1999) (Partial Consent Judgment). The consent judgment disposed of all claims asserted by Advantage and of all counterclaims asserted by Enterprise, except its claims for trademark dilution. *Id.* at 1. The consent judgment

also made clear, however, that Enterprise's dilution claims were unaffected. *Id.* at 3.

On October 25, 1999, after a bench trial, the district court entered judgment against Enterprise on the dilution claims. The court held that Enterprise was not entitled to relief, "because the slogan at issue is not sufficiently famous or distinctive to receive protection under the [FTDA]." *Advantage Rent–A–Car, Inc. v. Enterprise Rent–A–Car Co.,* No A 98CA 372, slip op. at 1 (W.D.Tex. Oct. 25, 1999). The district court concluded that fame was an element of Enterprise's claims under the state dilution statutes on which Enterprise relied as well. *Id.* at 10. Therefore, the district court held, Enterprise could not recover for dilution under federal or state law.

On appeal, the Fifth Circuit upheld the district court's determination that Enterprise's marks were insufficiently famous to win relief under the FTDA or under the Arkansas and New Mexico anti-dilution statutes. *Advantage Rent–A–Car, Inc. v. Enterprise Rent–A–Car Co.,* 238 F.3d 378, 381, 57 USPQ2d 1561, 1564 (5th Cir.2001). However, the Fifth Circuit held that the district court erred in its conclusion that lack of fame barred recovery under the Louisiana and Texas anti-dilution statutes, because both those statutes "require[ ] only distinctiveness, not fame." *Id.* The court, therefore, affirmed the judgment for Advantage on Enterprise's claim under the FTDA and the anti-dilution statutes of Arkansas and New Mexico, but remanded for a determination of whether the mark was sufficiently "distinctive" to state a claim under the Texas or Louisiana dilution statutes. *Id.*

Following the Fifth Circuit litigation, the Board dismissed Enterprise's opposition. *Enterprise Rent–A–Car Co. v. Advantage Rent–A–Car, Inc.,* 62 USPQ2d 1857, 1858, 2002 WL 1290196 (TTAB 2002). The Board held that Enterprise's claim of dilution under the FTDA was barred by *res judicata,* because the district court and the Fifth Circuit had already decided that Enterprise's mark was not famous. While Enterprise argued that its mark had achieved fame in the period after the admission of evidence on fame in the district court in 1999, the Board held that "a party seeking to invoke dilution as a ground for cancellation must establish that its mark became famous prior to applicant's first use of the mark." *Id.* at 1861 (citation omitted). "Unless [Enterprise] can establish that its mark was famous prior to [Advantage's] use—anywhere in the country—it cannot prevail." *Id.* The Board found that "[a]s noted in the Fifth Circuit's opinion, applicant has used the mark since at least as early as 1990," making "the question of whether opposer's mark has achieved fame since the earlier trial ... irrelevant." *Id.* at 1860–61.

The Board also rejected Enterprise's argument "that we must consider the respective rights of the parties in each geographical area in which they do business," based on its conclusion that "[b]y long-standing policy, the Board will consider geographic limitations only in the context of a concurrent use proceeding, [37 C.F.R. § ]2.133(c) ... and we see nothing in the FTDA or the [Trademark Amendments Act of 1999] which would support a different result."[2] *Id.* at 1861.

Finally, the Board denied Enterprise's motion to amend its opposition to include

---

**2.** 37 C.F.R. § 2.133(c) provides, "[g]eographic limitations will be considered and determined by the Trademark Trial and Appeal Board only in the context of a concurrent use registration proceeding."

claims of dilution under state statutes. After analyzing the language and the legislative history of the FTDA and of the Trademark Amendments Act of 1999, the Board concluded that it did not have jurisdiction to entertain grounds for opposition based on state dilution statutes. *Id.* at 7.

Enterprise timely appealed. We have jurisdiction pursuant to 15 U.S.C. § 1071(a)(1) and 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

### I

Trademark infringement law originated in the English common law of unfair competition. *Moseley v. v. Secret Catalogue, Inc.*, 537 U.S. 418, 123 S.Ct. 1115, 1119, 155 L.Ed.2d 1 (2003). Trademarks traditionally were not considered property, like patents or copyrights. In 1918, the Supreme Court held, "[t]here is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed. The law of trademarks is but a part of the broader law of unfair competition. . . ." *United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141 (1918). The Court further described "the fundamental error of supposing that a trade-mark right is a right in gross or at large, like a statutory copyright or a patent for an invention, to either of which, in truth, it has little or no analogy." *Id.* Instead, trademark law began as "both protection against unfair competition and a form of consumer protection against deception." David S. Welkowitz, *Trademark Dilution: Federal, State, and International Law* 4 (2002).

Thus, trademark law, both in the infringement and registration context, traditionally has been concerned with protecting consumers from being misled by the use of confusingly similar marks on goods originating from different producers, and with protecting a trademark owner's "good will against the sale of another's product as his." *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368, 44 S.Ct. 350, 68 L.Ed. 731 (1924); *see also Moseley*, 123 S.Ct. at 1119; *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163–64, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995); *United Drug Co.*, 248 U.S. at 97, 39 S.Ct. 48; *McLean v. Fleming*, 96 U.S. 245, 255, 24 L.Ed. 828 (1877); 1 Jerome Gilson et al., *Trademark Protection & Practice* § 1.03[2], at 1–21 to 1–22 (2002). This traditional view defined trademark law as prohibiting only those uses that "convey a false impression to the public mind, and [are] of a character to mislead and deceive the ordinary purchaser in the exercise of ordinary care and caution in such matters." *McLean*, 96 U.S. at 255, 96 U.S. 245; *see also* Welkowitz, *supra*, at 4 ("Traditional trademark infringement protects mark owners and consumers from uses of the same or similar marks that cause *confusion* among potential consumers.") (emphasis in original).

When Congress codified the common law on trademarks and unified the existing federal trademark statutes in the Trademark Act of 1946, Pub. L. No. 79–489, 60 Stat. 427 (codified as amended in scattered portions of 15 U.S.C.) ("the Lanham Act"), it reflected this traditional view of the nature of trademark protection and its limits:

> Trade-marks are merely a convenient way of distinguishing the goods of one trader from those of another. By furnishing a means of identification, they perpetuate good will, and enable purchasers, by recognizing the marks, to

buy again the goods which have pleased them before.... The public is thus assured of identity, and is given an opportunity to choose between competing articles. To protect trade-marks, i.e., marks which permit the goods of different makers to be distinguished from each other, is to promote competition and is sound public policy.

The protection which is accorded is security against misrepresentation as to the origin of goods, by suppressing imitations which are calculated to mislead buyers into the belief that the goods of one maker are those of another.

H.R. Rep. No. 76-944, at 3 (1939) (internal citation omitted); *see also* 1 Gilson, *supra*, § 1.03[3][b]. Hence, the Lanham Act prohibits the federal registration of a mark which "so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers." 15 U.S.C. § 1052(d) (2000).

Because the primary evil to be prevented by the Lanham Act is the likelihood of consumer confusion, and not the protection of exclusive, gross rights in intellectual property, the Lanham Act also allows for the concurrent federal registration of marks for use in different geographic areas, so long as such use does not cause likelihood of consumer confusion. The Act provides:

if the Director determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limitations as to the mode or place of use of the marks or the goods on or in connection with which such marks are used, concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce....

15 U.S.C. § 1052(d) (2000). Concurrent use registrations can be obtained in concurrent use proceedings before the Board, 37 C.F.R. § 2.99 (2002), or by order of the district court in a civil action. 15 U.S.C. § 1119 (2000). Our predecessor court defined the standards for the grant of concurrent use registrations and also articulated the complex rules for determining the geographic scope of each party's right to the trademark, according to priority of use, priority of registration, and agreements between the parties, in the 1970 decision *In re Beatrice Foods Co.*, 57 C.C.P.A. 1302, 429 F.2d 466, 474–76, 166 USPQ 431, 436–38 (1970).[3]

II

 The cause of action for trademark dilution, unlike traditional trademark infringement law, is a relatively recent theory of relief. As the Supreme Court recently noted, "[u]nlike traditional infringement law, the prohibitions against trademark dilution are not the product of common-law development, and are not motivated by an interest in protecting consumers." *Moseley*, 123 S.Ct. at 1119. Rather, dilution law is intended to pro-

---

**3.** Territorial rights can also be decided in civil actions for trademark infringement that are based on likelihood of confusion. Our sister circuits have developed rules for allocating territorial rights in this context. *See, e.g.,* *Thrifty Rent–A–Car Sys., Inc. v. Thrift Cars, Inc.*, 831 F.2d 1177, 4 USPQ2d 1709 (1st Cir.1987); *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 121 USPQ 430 (2d Cir.1959).

tect a mark's owner from dilution of the mark's value and uniqueness. *Id.; see also Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Utah Div. of Travel Dev.*, 170 F.3d 449, 453–54, 50 USPQ2d 1065, 1068–69 (4th Cir.1999). The first dilution statute was adopted by Massachusetts in 1947, providing a cause of action for dilution "notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." Mass. Gen. Laws ch. 110B, § 12 (1999). Some state statutes provide dilution protection only for "famous" marks. *See, e.g.,* Ark. Code Ann. § 4–71–213 (2002); N.M. Stat. Ann. § 57–3B–15 (2002). Other states appear not to require a showing that a mark is "famous." *See, e.g.,* La.Rev.Stat. Ann. § 51:223.1 (West 2002); Tex. Bus. & Com.Code Ann. § 16.29 (Vernon 2002).

In 1995 Congress passed the FTDA. The legislation was the result of a desire to bring uniformity and nationwide scope to the law of trademark dilution, by creating a federal civil remedy for trademark dilution:

> Presently, the nature and extent of the remedies against trademark dilution varies from state to state and, therefore, can provide unpredictable and inadequate results for the trademark owner. The federal remedy provided in H.R. 1295 against trademark dilution will bring uniformity and consistency to the protection of famous marks. . . .

H.R. Rep. No. 104–374, at 3 (1995). The House Judiciary Committee stated that "[t]he purpose of H.R. 1295 is to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of likelihood of confusion." *Id.* at 2. As examples of famous marks, the committee mentioned DUPONT, BUICK, and KODAK, and stated that "[t]he geographic fame of the mark must extend throughout a substantial portion of the U.S." *Id.* at 3, 7.

In addition to creating a federal dilution remedy, the Act sought to achieve uniformity by providing that the ownership by a person of a federal registration "shall be a complete bar to an action against that person, with respect to that mark, that is brought by another person under the common law or a statute of a State and that seeks to prevent dilution of the distinctiveness of a mark." 15 U.S.C. § 1125(c)(3) (2000). This provision was intended to further "the intent of the Lanham Act 'to protect registered marks used in such commerce from interference by state, or territorial legislation.'" H.R. Rep. No. 104–374, at 7 (quoting 15 U.S.C. § 1127 (2000)).

The FTDA, while providing a civil remedy for trademark dilution, did not by its terms add dilution as one of the grounds for opposition to trademark registration under 15 U.S.C. § 1063, or as one of the grounds for cancellation of registration under 15 U.S.C. § 1064. In 1996, the Board held that trademark dilution under the FTDA was not a statutory ground for opposition to or cancellation of trademark registration. *Babson Bros. Co. v. Surge Power Corp.*, 39 USPQ2d 1953, 1954–55, 1996 WL 528562 (TTAB 1996). A bill was then introduced in the House to add dilution under the FTDA as a ground of opposition. H.R. 1565, 106th Cong. (1999). That bill was enacted as part of the Trademark Amendments Act of 1999. The new statute amended the Lanham Act's provision on "Opposition to registration" to provide that "[a]ny person who believes that he would be damaged by the registration

of a mark upon the principal register, *including as a result of dilution under section 1125(c)* of this title, may ... file an opposition." 15 U.S.C. § 1063(a) (2000) (emphasis added). In enacting the legislation, the House Judiciary Committee specifically cited the Board's decision in *Babson* as "illuminat[ing] the need for further legislation." H.R. Rep. No. 106–250, at 5 (1999). The new legislation was intended to "provide[ ] holders of famous marks with a right to oppose or seek cancellation of a mark that would cause dilution as provided in the [Federal Trademark] Dilution Act." *Id.* at 4–5.

## III

 Enterprise in this appeal does not challenge that the district court and the Fifth Circuit's determined that its mark was not famous as of the late 1990s or that *res judicata* applies as to that question.[4] However, Enterprise contends that prior use by Advantage in a limited geographic area does not bar its claim of dilution in the opposition proceedings. Enterprise reasons that the Board must consider whether Enterprise's mark has achieved fame since the late 1990s. We reject this argument and conclude that any prior use, even in a limited geographic area, defeats an injunction under section 1125(c), and, therefore, bars a claim of dilution as a ground for opposition under section 1063.

We begin with an examination of the plain language of the statute. *Info. Tech. & Applications Corp. v. United States,* 316 F.3d 1312, 1320 (Fed.Cir.2003). The statute provides, in relevant part, that the owner of a famous mark is entitled "to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous." 15 U.S.C. § 1125(c) (2000). Standard dictionary definitions define the word "such" in this context to mean, "having a quality already or just specified—used to avoid repetition of a descriptive term ... of this or that character, quality, or extent: of the sort or degree previously indicated or implied." *Webster's Third New International Dictionary* 2283 (1968). The language of the statute standing alone and divorced from its context, purpose, and history is perhaps ambiguous. The term "such use" could refer to any use by the defendant in commerce. Alternatively, the reference to "such use" could refer to the particular use being challenged in the litigation. If the use being challenged were limited to a particular geographic area in which there had been no prior use by the defendant, the suit would not be barred. However, we think that the latter is not a tenable reading of the statute. The entire purpose of the statute was to provide for nationwide relief against diluting uses in a single federal proceeding in order to avoid the problem of multiple suits under individual state statutes:

4. Enterprise's position on this question has not been consistent. Before the Board, Enterprise argued that the Fifth Circuit determined that its mark was not famous "as of 1999." Opposer's Memorandum in Opposition to Applicant's Motion to Dismiss for Failure to State a Claim at 2, *Enterprise,* Opp. No. 120,101 (TTAB May 2, 2001). In this court, however, Enterprise argues that the Fifth Circuit determined its mark was not famous "as of mid–1997." (Appellant's Brief at 23.) As

the Board observed, "[n]either the district court nor the Fifth Circuit specifically addressed the question of timing, i.e., when the mark was (or was not) famous." *Enterprise,* 62 USPQ2d at 1860 n. 9. We need not decide the effective date of the Fifth Circuit's fame determination, however, because we hold that Enterprise's lack of fame prior to Advantage's first use in 1990 bars its claim of dilution under the FTDA.

A federal dilution statute is necessary because famous marks ordinarily are used on a nationwide basis and dilution protection is currently only available on a patch-quilt system of protection.... Further, court decisions have been inconsistent and some courts are reluctant to grant nationwide injunctions for violation of state law.... This simply encourages forum-shopping and increases the amount of litigation.

H.R. Rep. No. 104–374, at 3–4. Thus, we think that the statute simply did not contemplate suits limited to particular geographic areas and that the statute's reference to "such use" must refer to any use in commerce. In this connection it is significant that there is no qualification in the statute requiring that the defendant's prior use be substantial or cover a wide geographic area to defeat an injunction under the statute.

It is clear, moreover, that Congress was cognizant of the question of the geographic extent of marks in enacting the FTDA. One of the factors Congress directed courts to consider in determining whether a mark had achieved fame was, "the geographical extent of the trading area in which the mark is used." 15 U.S.C. § 1125(c)(1)(D) (2000). Had Congress intended to include a requirement that a defendant's prior use cover a substantial geographic area in order to defeat an injunction under the Act, it knew how to do so. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983) (citation omitted).

Enterprise nonetheless contends that the provision relating to concurrent geographic use in the likelihood of confusion context requires a different interpretation of the statute. Section 2(d) of the Lanham Act provides, in part:

if the Director determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks ... concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce.

15 U.S.C. § 1052(d) (2000). In *Beatrice Foods,* our predecessor court held that "[o]nce there has been a determination that both parties are entitled to a federal registration, the extent to which those registrations are to be restricted territorially must ... be governed by the statutory standard of likelihood of confusion." 429 F.2d at 474, 166 USPQ at 436. The court held that generally in concurrent use proceedings (involving likelihood of confusion) in which neither party has registered its mark, the prior user is entitled to a registration covering the entire United States, including areas of its use and non-use, subject only to the exception of geographic areas where the junior user can prove prior use. The junior user is, in effect, frozen in its area of prior use. However, generally where the junior user has previously obtained federal registration, the policy of rewarding registration requires granting the prior registrant nationwide registration, subject only to those areas where the senior user can prove prior use. *Id.* at 474–76, 166 USPQ at 436–38; *see also* 3 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*

§ 20:84 (4th ed. 2002).[5]

While Enterprise's argument is less than clear, apparently Enterprise contends that it should be treated like a junior user that has obtained registration, entitling it to priority of use throughout the United States, except where Advantage was the prior user. It is, therefore, supposedly entitled to defeat a nationwide registration of the mark by Advantage. It is clear that Congress rejected this approach. There is no provision in the Lanham Act to allow for concurrent use registrations in the dilution context. In fact, when Congress amended section 1063 of the Lanham Act in 1999 to add dilution under the FTDA as a ground for opposition, it also amended section 1052, the section that grants the Board the power to issue concurrent use registrations, to make clear that dilution could not be considered in proceedings brought under that section. 15 U.S.C. § 1052(f) (2000). The statute provides: "A mark which when used would cause dilution under section 1125(c) of this title may be refused registration only pursuant to a proceeding brought under section 1063 of this title." *Id.* Section 1063 does not provide for concurrent use registrations, an omission that must be seen as a deliberate choice made by Congress.[6] It is not the province of this court or of the Board to read a new provision into the FTDA to the effect that the Board may grant concur-

rent use registrations to avoid trademark dilution.

Our conclusion that any prior use, even in a limited geographic area, defeats a claim of dilution in a civil action under section 1125(c) leads to the conclusion that it defeats an opposition to registration based on dilution under section 1063. Section 1063 explicitly incorporates the definition of dilution from section 1125(c), allowing for the filing of an opposition by "[a]ny person who believes that he would be damaged by the registration of a mark upon the principal register, including as a result of dilution *under section 1125(c)*." 15 U.S.C. § 1063(a) (2000) (emphasis added). This is confirmed by the legislative history, which states that the law "provides holders of famous marks with a right to oppose or seek cancellation of a mark that would cause dilution as provided in the [FTDA]." H.R. Rep. No. 106–250, at 4 (1999). Because there can be no dilution under the FTDA where the allegedly famous mark did not achieve fame prior to any use by the accused infringer, there can be no opposition based on dilution under such circumstances.

Because Advantage used the mark in the San Antonio, Texas, area in 1990, before Enterprise's mark allegedly became famous,[7] the Board correctly rejected Enterprise's opposition and registered the Advantage mark.

---

**5.** There also may be instances where, in order to prevent likelihood of confusion, the Board must award concurrent use registrations that leave portions of the nation unregistered. *See Beatrice Foods,* 429 F.2d at 473, 166 USPQ at 436.

**6.** Even if Congress had extended the Lanham Act provisions on concurrent use to the FTDA, it would not lead to the result Enterprise seeks—prevention of Advantage's federal registration. Rather, the proceeding would be converted to a concurrent use proceeding,

in which Advantage would be eligible to receive federal concurrent use registration. *See, e.g., Faces, Inc. v. Face'S, Inc.,* 222 USPQ 918, 919, 1983 WL 62366 (TTAB 1983).

**7.** In fact, the district court found that Enterprise did not even use its mark as the company slogan until 1994, four years after Advantage's prior use began in 1990. *Advantage,* No. A 98CA 372, slip op. at 3 & n.2.

## IV

 Enterprise's final contention is that the Board improperly refused to allow it to amend its opposition to include claims of dilution under state dilution statutes. Some of these statutes appear to apply without regard to the fame of the mark, and so Enterprise would not be barred by *res judicata* from pressing these claims before the Board. The Board refused the motion to amend, holding that the Trademark Amendments Act did not add dilution under state statutes as a ground for opposition. *Enterprise*, 62 USPQ2d at 1858–59. We agree with the Board.

The new statute provides for oppositions based on "dilution under section 1125(c)," not based on dilution under state law. And as discussed above, the legislative history indicates that Congress enacted this provision in response to the Board's decision in *Babson*, which dealt with the question of whether opposition could be based on dilution under the FTDA. *See* H.R. Rep. No. 106–250, at 5; *Babson*, 39 USPQ2d at 1953. The House Judiciary Committee explicitly stated, "[s]ection two provides holders of famous marks with a right to oppose or seek cancellation of a mark that would cause dilution *as provided in the 'Federal Trademark Dilution Act of 1995.*'" H.R. Rep. No. 106–250, at 4 (emphasis added). There is nothing in the language or in the legislative history of the Trademark Amendments Act of 1999 to suggest that Congress added to the statute any grounds for opposition other than dilution under the FTDA, much less dilution under state statutes.[8] And rejecting such an opposition is consistent with one of the stated purposes of the Lanham Act, "to protect registered marks used in such commerce from interference by State, or territorial legislation." 15 U.S.C. § 1127 (2000); *see also* H.R. Rep. No. 104–374, at 7.

To be sure, the statute allows oppositions to be filed by "[a]ny person who believes that he would be damaged by the registration of a mark upon the principal register, including as a result of dilution under section 1125(c)." 15 U.S.C. § 1063(a) (2000). Enterprise argues that

---

8. Enterprise argues that by overruling *Babson*, Congress intended to overrule the long-standing Board rule mentioned in *Babson* that violations of state dilution statutes do not constitute a ground for opposition or cancellation. This argument is unsupported.

*Babson* presented the question of first impression of whether dilution under the FTDA constituted a ground of opposition, and merely noted by way of a passing footnote the well-established Board rule regarding state dilution causes of action. *Babson*, 39 USPQ2d at 1954 n. 4 (citing *Devries v. NCC Corp.*, 227 USPQ 705, 706 n. 3, 1985 WL 71936 (TTAB 1985); and *K2 Corp. v. Philip Morris Inc.*, 192 USPQ 174, 1976 WL 21120 (TTAB 1976), *aff'd*, *Philip Morris Inc. v. K2 Corp.*, 555 F.2d 815, 194 USPQ 81 (CCPA 1977)). There is no suggestion in the legislative history of the Trademark Amendments Act of 1999 that Congress was concerned with the state law aspect of *Babson*. *Babson* was uniformly de-

scribed in the legislative history as a case that rejected dilution under the FTDA as a ground for opposition. *See, e.g.*, H.R.Rep. No. 106–250, at 5 (quoting *Babson*, 39 USPQ2d at 1954) (stating that *Babson* "illuminated the need for further legislation," because "the Board held, 'Based on the provisions of the Federal Dilution Act ... we hold that the framers of the law did not intend to provide a new statutory ground for opposition and cancellation.' "); 145 Cong. Rec. S7, 452–56 (daily ed. June 22, 1999) (statement of Sen. Hatch) ("In *Babson Bros. Co. v. Surge Power Corp.*, 39 USPQ2d 1953, 1996 WL 528562 (TTAB 1996), the TTAB held that it was not authorized by the Federal Trademark Dilution Act to consider dilution as grounds for opposition or cancellation of a registration. Thus, under current law a trademark owner may seek relief under the federal dilution statute only after dilution of the mark has occurred.").

this provision allows for the filing of an opposition based on alleged damage as defined by state causes of action. We held in *Young v. AGB Corp.*, 152 F.3d 1377, 47 USPQ2d 1752 (Fed.Cir.1998), however, that this language merely states the requirement for standing. *Id.* at 1379–80, 152 F.3d 1377, 47 USPQ2d at 1754. Once standing is established, in order to state a claim, an opposer must base its ground of opposition on a statutory claim found in the Lanham Act. *Id.* at 1380, 47 USPQ2d at 1754. But the Lanham Act does not create a ground for opposition based on state dilution law.

Enterprise in this case sought to amend its opposition to add claims under state law; the Board did not abuse its discretion in refusing those amendments.

## CONCLUSION

For the foregoing reasons, the judgment of the Board is

*AFFIRMED.*

## COSTS

No costs.